### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JASON PATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| LAKE COUNTY CORONER'S OFFICE, and ) | |
| LAKE COUNTY CORONER JENNIFER ) | |
| BANEK, in her official and individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Jason Patt, for his Complaint against Defendants Lake County Coroner's Office, Lake County Coroner Jennifer Banek and Lake County, states as follows:

## SUMMARY OF CLAIMS

1. The day before she assumed office, Lake County Coroner Jennifer Banek directed Plaintiff – the Chief of the Office who had enjoyed an exemplary, award-winning career in law enforcement – to retire, assuring him that she would tell prospective employers that he was honorably retired. Instead, upon learning that Plaintiff had adopted the Office's legally retired cadaver-sniffing dog, "Bones", she became furious and exacted revenge by telling prospective employers that Plaintiff was on a "do not hire" list and had engaged in serious misconduct. Banek's vengeful action blacklisted Plaintiff from another position in law enforcement. Plaintiff brings this action to redress (1) violations of due process rights, as guaranteed by the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 (Count I), (2) defamation *per se* (Count II), and (3) tortious interference with prospective economic advantage (Count III).

**JURISDICTION**

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) and (4) in that this is a suit in equity to redress the deprivation of the Plaintiffs' rights, privileges and immunities under color of state law as secured by the Fourteenth Amendment and 42 U.S.C. § 1983.

4. This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 in that Plaintiff asks this Court to invoke supplemental jurisdiction over the state law claims asserted in this Complaint.

**VENUE**

6. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) and (c) in that Defendants all reside in this district and all of the events giving rise to Plaintiff's claims and causes of action occurred within this district.

**THE PARTIES**

7. Defendant Lake County Coroner's Office ("Coroner's Office") operates under the laws of the State of Illinois. Defendant Coroner's Office is headed by an individual elected by the registered voters of Lake County every four years, the Lake County Coroner.

8. Defendant Lake County Coroner Jennifer Banek ("Banek") was elected Coroner of Lake County in November of 2020 and serves in that position until November 30, 2024 unless reelected in November of 2024. Defendant Banek has final high policy-making authority with regard to all conduct alleged in this Complaint. Defendant Banek at all times relevant acted under the color of state law. Defendant Banek is sued in her individual and official capacities.

9. Plaintiff Jason Patt ("Patt") resides in Gurnee, Illinois.

## STATEMENT OF FACTS

10. Patt has had an exemplary career of over twenty years of service to his country and his community. At the age of 18, Patt enlisted in the United States Navy where he honorably served eight years. During that time, he was deployed four times, including a tour in Iraq. While in the Navy, Patt began his 21-year law enforcement career as a military patrolman.

11. From 2005 to 2007, Patt was employed as corrections officer by the Lake County Sheriff's Office, where his primary responsibility was to pick up and transport people being held around the state on outstanding warrants issued from Lake County.

12. Patt joined the Lake County Coroner's Office in 2007. During his 13 years in the Coroner's Office, Patt worked on K9, investigations, gang and drug units, child safety, and internal affairs. Patt was assigned as Investigator to Lake County Major Crimes Task Force, Agent with Lake County Metropolitan Enforcement Group, Task Force Officer with the Drug Enforcement Administration (obtained Top Secret SCI Security Clearance) and was certified to join the county Crisis Intervention Team. Patt started, and ran, the first ever child safety program for Lake County through SafeKids Chicago, saved a family from drowning during a violent storm in 2014, and was named the 2016 recipient of the Lake County Journal's "People Who Make Lake County Great" award. Patt was certified as a homicide investigator, narcotic investigator, traffic crash investigator, advanced homicide investigator, cold case investigator, forensic entomology investigator, advanced interviewer and interrogator, FBI-LEEDA certified internal affairs investigator, hostage negotiator, evidence technician, gang investigator, and an arson and fire investigator. Patt became one of few law enforcement investigators in the country to be board certified by the American Board of Medicolegal Death Investigators.

13. On December 1, 2016, Patt was promoted to Chief of the Coroner's Office. During his time as Chief of the Office, Patt was largely responsible for his department attaining IACME (International Association of Coroners and Medical Examiners) accreditation for the first time. Patt also made sure all eligible staff members became board certified, starting from zero staff members to achieving 100% compliance. He also was directly responsible for creating the department's first ever K9 program, the entirety of which – even food – was funded through grants for which he applied. Patt was the handler for the Office's cadaver-sniffing dog, "Bones" (shown below), a Belgian Malinois which was also trained in firearms retrieval.



14. The promotion to Chief was a blessing and a curse. The promotion came with a raise and increased responsibilities. However, Patt knew that if someone else were elected Coroner in 2020, that person would likely appoint someone else to be Chief. Patt knew that that scenario

could have an emotional impact on Bones, who spent nearly every hour of the day with Patt, even while Patt was on Task Force assignments with the DEA.

15. Accordingly, in the months leading up to the November 2002 election, Patt began enforcing "separation time" with Bones by, among other things, having him sleep in Patt's basement instead of his bedroom, and leaving him at home when Patt was engaged in nonwork activities.

16. The result was a disaster for Bones. Bones began engaging in unusual behaviors, such as barking and spinning", repeatedly defecating indoors, destroying furniture and other destructive and unusual activities. In October 2020, Bones' veterinarian diagnosed him with separation anxiety and prescribed increasing amounts of fluoxetine, an antidepressant with many common side effects, including symptoms of anxiety, dizziness and muscle weakness. That drug, however, failed to curb Bones' aberrant and destructive behavior.

17. Accordingly, on November 30, 2020, outgoing Coroner Howard Cooper made the humane decision to retire Bones in accordance with the Police Dog Retirement Act, 510 ILCS 82/5, and allowed Patt to adopt him. (Exhibit A).

18. Banek was elected Lake County Coroner in November of 2020. On November 30, 2020 – one day before Banek officially assumed office – Patt was summoned to a meeting with Banek and Lake County Director of Human Resources John Light. During that meeting, Banek and Light told Patt that (1) his position was "an appointed position"; (2) in light of his lengthy and valued service, "we're going to let you retire" in lieu of termination; and (3) if Patt submitted a letter of retirement, Banek would tell any prospective employees that Patt "honorably retired" from the Coroner's Office.

19. Consistent with Banek's directive, on December 1, 2020, Patt submitted his letter of retirement. (Exhibit B). Banek accepted Patt's retirement, and immediately replaced him with

a person whom the Coroner's Office had earlier fired for, among other things, "unprofessional conduct."

20. On information and belief, that same day, Banek became furious with Patt when she learned that he had adopted Bones.

21. On December 11, 2020, Banek demanded that Patt return Bones (Exhibit C); Patt refused, as Bones had been legally retired for legitimate reasons (Exhibit D, December 15, 2020, Response Letter from Patt's Counsel). The Lake County States Attorney's Office agreed that Bones' retirement was legitimate, and Patt was allowed to keep him.

22. Unbeknownst to Patt, his adoption of Bones prompted Banek to exact unlawful retribution against Patt, though he had done absolutely nothing wrong.

23. Before his retirement from the Coroner's Office, Patt had been in discussions with the Lake County Sheriff's Office about a range of law enforcement employment opportunities, including the Director of Homeland Security for the Lake County Sheriff's Office. However, after Banek assumed office, those discussions ended; the line went dead.

24. Thereafter, Patt applied for a position with the City of Waukegan as an Investigator for Code Enforcement but was rejected, despite being overqualified for the position.

25. Patt thereafter decided to look for law enforcement related employment in the private sector. Patt sought employment with numerous other entities, including Amazon (Loss Prevention Manager), AbbVie (Director of Security), Horizons (Personal Protection Specialist), Uline (Safety Manager), Walmart (Corporate, Loss Prevention Manager), United Airlines (Investigator), American Airlines (Investigator), and Waste Management (Security Specialist). Notwithstanding Patt's excellent resume, all of these (and more) potential employers rejected him, often deep into the interview process.

26. In 2022, Patt finally found employment as a Drug Program Supervisor at the Surface School Command at Great Lakes Naval Station. This position is far removed from law enforcement; Patt's daily duties involve observing servicemen urinate into cups and processing those samples for drug testing.

27. Certain questions posed to Patt during the security clearance investigation for that position prompted Patt to serve a FOIA request for his investigative file for his security clearance. Specifically, an investigator told Patt that Banek told him that Patt was not eligible for rehire because he was AWOL from the office and not performing his duties and that Banek had said other "bad things" that the investigator declined to repeat. Pursuant to his FOIA request, Patt learned that Banek informed the investigator that she had been informed that Patt had often failed to show up for work and had engaged in extramarital affairs; she also stated that Patt was ineligible for rehire due to "reasons relating to unfavorable employment" and that she had adverse information about "finances" and Patt's "general behavior or conduct."

28. Banek's statements were false, and she made them in a deliberate effort to harm Patt. It is now evident that Banek made such statements to other prospective employers who called about Patt's record with the Coroner's Office.

29. Lake County employee records for departing employees contain a yes/no question as to whether the departing employee is "eligible for rehire." Given Banek's statement, on information and belief, that question is answered "no" in Patt's Lake County employment file.

## COUNT I
## Due Process Deprivation of Occupational Liberty Interest

30. The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

31. Defendants deprived Plaintiff of his Fourteenth Amendment occupational liberty interest by forcing his retirement and then issuing public statements that effectively blacklisted him from comparable positions in law enforcement.

32. Defendants' statements were defamatory *per se* in that they impugned his moral character and implied dishonesty or other job-related moral turpitude.

33. Defendants' statements were false and stigmatizing.

34. Defendants repeatedly made such statements to Plaintiff's potential future employers.

35. As the direct result of Defendants' statements, Plaintiff suffered a tangible loss of employment opportunities, and he has been stymied in his efforts to continue his calling in law enforcement.

**WHEREFORE**, Plaintiff seeks the following relief as to Count I of the Complaint:

A. The entry of judgment against all Defendants including a declaration that Defendants' conduct violated Plaintiff's constitutional right to due process;

B. Injunctive relief prohibiting Defendants from further dissemination of their "ineligible for rehire" determination and the false statements referenced above;

C. Compensatory damages for Plaintiff's lost employment opportunities;

D. Compensatory damages for the mental anguish, humiliation, degradation, physical and emotional pain and suffering, and damage to reputation;

E. Punitive damages as allowed by law as against Banek; and

F. An award of reasonable attorneys' fees, costs, and litigation expenses.

## COUNT II
### Defamation *Per Se*

36. The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

37. Defendants' statements constitute defamation *per se*.

38. Defendants made such statements with actual malice and with the deliberate intention of impeding Patt's future employment opportunities.

39. Patt has been damaged by Defendants' statements.

**WHEREFORE**, Plaintiff seeks the following relief as to Count II of the Complaint:

A. The entry of judgment against Banek in her individual capacity;

B. Compensatory damages;

C. Punitive damages; and

D. Costs of suit.

## COUNT III
### Tortious Interference with Prospective Economic Advantage

40. The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

41. Given Patt's qualifications, he had a reasonable expectancy of employment with each of the prospective employers which contacted Banek about Patt's record with the Coroner's Office.

42. Banek certainly knew of each such prospective employer with which she communicated.

43. Banek intentionally interfered with each such expectancy to prevent Patt from obtaining the positions, and Patt did not obtain the positions due to Banek's intentional interference.

44. Banek acted with actual malice.

**WHEREFORE**, Plaintiff seeks the following relief as to Count III of the Complaint:

A. The entry of judgment against Banek in her individual capacity;

B. Compensatory damages;

C. Punitive damages; and

D. Costs of suit.

Jury Demanded: Plaintiff requests a trial by jury.

Respectfully submitted,

*/s/Paul K. Vickrey*
Paul K. Vickrey (vickrey@vvnlaw.com)
Patrick F. Solon (solon@vvnlaw.com)
Dylan M. Brown (brown@vvnlaw.com)
VITALE, VICKREY, NIRO, SOLON & GASEY LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
(312) 236-0733
Fax: (312) 236-3137

*Attorneys for Plaintiff, Jason Patt*